John D. **OLITSKY**, Plaintiff–Appellee, Cross–Appellant,

v.

**SPENCER GIFTS, INC.,**
Defendant–Appellant,
Cross–Appellee.

No. 87–1231.

United States Court of Appeals,
Fifth Circuit.

April 11, 1988.
Rehearing Denied May 11, 1988.

Max L. Lieberman, Pelino & Lentz, Philadelphia, Pa., Paul M. Eskildsen, Lawrence D. Levien, Washington, D.C., for defendant-appellant cross-appellee.

Hal K. Gillespie, Hicks, Gillespie, James & Lesser, Dallas, Tex., for plaintiff-appellee cross appellant.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

In December 1983, Spencer Gifts, Inc. fired John D. Olitsky from his position as merchandise manager. Olitsky was 53 years old. After unsuccessful efforts at conciliation by the Equal Employment Opportunity Commission, Olitsky brought this discrimination case in federal district court, alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. After a jury trial, the court entered judgment on both claims for Olitsky. Spencer Gifts appeals the award of damages to Olitsky, but Olitsky also appeals, contending that the court should have awarded prejudgment interest and additional liquidated damages. We reverse and remand for a new trial and thus do not reach Olitsky's claims.

## I.

In 1973, Spencer Gifts originally hired Olitsky, at the age of 42, as a buyer for its retail store division. In 1979, Olitsky resigned to take a position with another firm. But in 1981, Spencer Gifts again hired Olitsky, at the age of 50, as merchandise manager. Olitsky occupied this position until December 1983, when he was fired. Olitsky first filed a charge of age discrimination with the EEOC. The EEOC's efforts to conciliate the dispute proved unsuccessful, and Olitsky brought this action in district court. He charged that Spencer Gifts fired him because of his age, in violation of the ADEA. He also charged that Spencer Gifts fired him for the purpose of defeating his pension rights, in violation of ERISA. At the time of his discharge, Olitsky was only a few months from meeting the ten-year vesting period of his pension rights.

The evidence at trial showed that Olitsky performed well in 1981 and 1982. During those years, he received bonuses, raises, and favorable evaluations. Spencer Gifts introduced evidence attempting to show, however, that Olitsky's 1983 performance was less competent. Testimony indicated, for example, that Olitsky's 1983 sales figures were only slightly higher than his 1982 figures, while the chain as a whole—and in particular two other merchandise buyers who moved up when Olitsky was fired—showed much greater increases. Furthermore, Spencer Gifts' president testified that he found inadequate Olitsky's performance at a regional sales meeting.

In response to Spencer Gifts' claims, Olitsky testified that his sales figures, while showing little improvement from the previous year, nevertheless met, or nearly met, his annual sales plan. He claimed that Spencer Gifts viewed meeting the plan as more important than year-to-year comparisons because buyers were assigned different categories of merchandise from one year to the next. In 1983, for example, he testified that Spencer Gifts had assigned him the "downtrending" categories—those that were not expected to show sales increases. Olitsky believed that he had done well to sell as much from those categories as he did. Thus, Olitsky sought to prove that Spencer Gifts' articulated reason for firing him—poor performance—was a pretext.

An important and possibly determinative item of evidence was the EEOC's file on this dispute. During the EEOC's investigation and conciliation efforts, EEOC agent Janice Johnson had interviewed Ronald Mangel, Spencer Gifts' in-house counsel. Although the district court prevented Johnson from testifying, it allowed the introduction of her file into evidence. Johnson's file contained handwritten notes that reported Mangel as saying he "can't rebut if McNally was promoted." McNally was a younger employee who was promoted when Olitsky was fired. Olitsky's counsel forcefully argued to the jury that this statement was an admission that Spencer Gifts could not rebut the allegation of age discrimination if, as was true, McNally had been promoted.

## II.

Spencer Gifts argues on appeal that the district court erred in admitting the EEOC

file into evidence.[1] It asserts that the file is specifically inadmissible under section 706(b) of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5(b); that the file contains statements made in the course of compromise and settlement discussions and thus is inadmissible under Fed.R.Evid. 408; and that the file is hearsay not within any exception. We agree that the admission of the file violated section 706(b).

Section 706(b) provides in part that the EEOC shall investigate charges of unlawful employment practices.

> If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.*

42 U.S.C. § 2000e–5(b) (emphasis added).

■ Olitsky first argues that section 706(b) applies only to prelitigation disclosures to the public, not to subsequent litigation between the parties to the dispute. Olitsky is correct that the section does not prevent disclosure by the EEOC of material to the parties to the agency proceeding. *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 598, 101 S.Ct. 817, 822, 66 L.Ed.2d 762 (1981). The issue in this case, however, is not governed by the part of the section that prohibits disclosure to the public; it is governed by the part of the section that prohibits any use of the material in

"subsequent proceedings." We interpreted this latter part in *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 880–81 (5th Cir. Unit A 1981). In *Branch* we denied the plaintiff's request to discover EEOC conciliation material for use in a Title VII action against the employer, in part because section 706(b) prohibits the use of such material in later litigation. We therefore reject Olitsky's argument in the present case. Section 706(b) clearly prohibits any use of EEOC conciliation material in subsequent litigation, even by the parties to the agency proceeding.

We acknowledge that there may exist some doubt as to whether section 706(b) of Title VII has any application to an ADEA case. We do not address that issue because neither party has raised it. Spencer, of course, argues that section 706(b) directly governs the dispute. Olitsky argues only that the prerequisites of the confidentiality provision of the section were not met; he does not argue that the section has no applicability to ADEA cases.

■ Olitsky also argues that the confidentiality provision does not apply to this case because the EEOC's role in age discrimination cases does not include a formal finding of reasonable cause.[2] He points out that, under section 706(b), such a finding seems to be necessary before the beginning of the "conference, conciliation, and persuasion" stage. Because no formal finding was ever made in the agency's action on his claim, Olitsky argues that, when Johnson recorded the Mangel statements, the EEOC was engaged not in conciliation but in investigation. As a result, the confidentiality provision should be inapplicable.

We reject Olitsky's mechanistic interpretation of the statute. Discussing the pur-

1. Spencer Gifts also raises several other challenges to the district court's decision. It argues that the evidence was insufficient to support the fact findings, that the court erred in instructing the jury on liquidated damages and on Olitsky's obligation to mitigate damages, and that Olitsky's lost pension benefits were improperly calculated. Olitsky in turn challenges the district court's failure to include prejudgment interest in the award, and its refusal to award liquidated damages as a result of the front pay award. Because we hold that the admission of the

EEOC file was reversible error, we express no opinion on these other issues.

2. Title VII requires the EEOC to make a finding of reasonable cause before beginning the period of conciliation. 42 U.S.C. § 2000e–5(b). The ADEA, by contrast, provides only that, after receiving a charge of age discrimination, the EEOC "shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d).

poses of the confidentiality provision of the section, we have held:

> The obvious purpose of the statute's prohibition on revealing statements made or actions taken during the Commission's conciliation efforts is to promote the congressional policy favoring unlitigated resolution of employment discrimination claims. Cooperation and voluntary compliance are the preferred means for the elimination of unlawful employment discrimination, and Congress ... established an informal dispute resolution procedure to accomplish this goal.

*Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 880 (5th Cir. Unit A 1981). Mangel's supposed admission of liability to the EEOC investigator in this case is exactly the kind of exchange among the parties and the EEOC that informal conciliation ought to encourage. Admissions of partial liability tend to narrow the issues in the settlement discussions and therefore facilitate a resolution without litigation. If we were to allow the use of such admissions in later litigation, we would attach a penalty to the candor and forthrightness that Congress obviously believed were necessary to the successful conciliation of disputes. We decline to take that step.

Olitsky next argues that Spencer Gifts waived its right to complain about the admission of the EEOC file. Olitsky does not assert that Spencer Gifts failed to object to the admission of the file. It is difficult to understand the argument that Olitsky does make, but he apparently contends that because Spencer Gifts successfully prevented the live testimony of Johnson concerning the file, it somehow elected to forego any challenge to the admission of the file. Olitsky, however, cites no authority for this proposition and our review of the record does not persuade us that Spencer Gifts abandoned its objections to the file.

Finally, Olitsky argues that the introduction of the EEOC file, if error, was harmless. In *Figgs v. Quick Fill Corp.*, 766 F.2d 901 (5th Cir.1985) (per curiam), we applied harmless error analysis to a claim that testimony was erroneously admitted in violation of section 706(b). In that Title VII case, the district court allowed the employer to introduce evidence that it had made an offer of reinstatement to the employee during conciliation by EEOC. The evidence was relevant to whether the employee had made reasonable efforts to mitigate damages. We held, however, that any error in the district court's evidentiary ruling was harmless because there was additional evidence, "totally outside the realm of EEOC conciliation efforts, [that was] sufficient to support the district court's finding that Quick Fill made an unconditional offer of reinstatement to Figgs." *Id.* at 903.

We think the present case is different from *Figgs*. The statements by Mangel in the EEOC conciliation file may easily be interpreted as a virtual concession of liability by Spencer Gifts. Indeed, that is exactly what Olitsky's counsel repeatedly suggested to the jury in closing argument. We are not persuaded that the erroneous introduction of this highly damaging statement had no effect on the jury's verdict. The other competent evidence of Spencer Gifts' liability is not sufficiently strong to allow such a conclusion. Thus, we cannot conclude that the error was harmless.

### III.

The judgment of the district court is REVERSED and the cause is REMANDED for a new trial.